UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-21-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 22-cr-50 (KAD) (TOF) |
| v. | VIOLATIONS: |
| | 18 U.S.C. § 1343 (Wire Fraud) |
| EDWARD F. ZIEGLER II | 26 U.S.C. § 7201 (Tax Evasion) |
| | 18 U.S.C. § 981(a)(1), 28 U.S.C. § 2461(c) (Forfeiture) |

INDICTMENT

The Grand Jury charges:

Background

At all times relevant to this Indictment:

1. The defendant EDWARD F. ZIEGLER II ("ZIEGLER") was a resident of New Britain Connecticut and had a second home in Bridgton, Maine.

2. A privately owned business located in Berlin, Connecticut, provided a variety of services to its non-profit and commercial customers. The small business employed approximately five people. This business operated and controlled bank accounts in its own name and its computer domain, registered with GoDaddy, Inc., used a Microsoft system for its e-mail services with servers located outside Connecticut. The identity of this business is known to the Grand Jury and will be referred to as Company A.

3. Company A sent its customers bills for services rendered. The customers in turn paid Company A. Some of Company A's customers, whose identities are known to the Grand Jury, are referred to here by their initials as GSA, HWGF, KK, LE, LFC, P&W, SOC, SPAC, TOG, and TON.

4. From 1995 until approximately June 2020, ZIEGLER was employed as Company A's Office Manager and worked at its facility in Berlin. He was not authorized to open bank

accounts for Company A. ZIEGLER used a business email account that Company A assigned to him.

5. As Company A's Office Manager, ZIEGLER had various responsibilities pertaining to the billing procedures and the collection of funds due Company A from its customers, including, among others: processing purchase orders, preparing and sending invoices, handling billing and accounts receivables, preparing and processing bank deposits, and performing financial record keeping.

6. As part of his responsibilities, ZIEGLER was responsible for preparing and sending invoices to Company A's customers using Company A's computer system. ZIEGLER sent invoices to Company A's customers via U.S. Mail and via email using his Company A email account.

7. As part of his duties, ZIEGLER was responsible for updating Company A's records when customer checks were received as payment. He did so by recording pertinent information into Company A's records, including the date paid, the amount paid, and the customer's check number.

8. As part of his responsibilities, ZIEGLER prepared deposit tickets and deposited customer checks into Company A's bank account.

9. Also, as part of his responsibilities, ZIEGLER provided Company A's independent accounting firm with deposit tickets and customer checks associated with each respective deposit ticket.

COUNTS ONE THROUGH TWENTY-TWO
(Wire Fraud)

10. Paragraphs 1 through 9 are incorporated by reference.

The Scheme to Defraud

11. Beginning from at least as early as approximately 2006 and continuing until the present, in the District of Connecticut and elsewhere, the defendant EDWARD F. ZIEGLER II knowingly, willfully, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds.

The Purpose of the Scheme

12. The purpose of the scheme to defraud was for ZIEGLER to enrich himself by obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, by taking and diverting checks intended for Company A, fraudulently depositing those checks into an account solely within his control, and withdrawing the funds for his own personal use and benefit.

The Manner and Means of the Scheme

The manner and means by which ZIEGLER sought to accomplish and did accomplish the scheme to defraud included the following:

13. It was a part of the scheme to defraud that ZIEGLER opened a bank account at Webster Bank in Connecticut in his name with the qualifying language "Doing Business As [Company A's name]," said account ending in x-0301 (ZIEGLER's "DBA Account"), thus falsely representing that he was doing business as Company A, when in truth and in fact, he was not doing business as Company A and as Company A's Office Manager was not authorized to open such an account or transact business through such an account.

14. It was further part of the scheme to defraud that ZIEGLER would and did generate invoices from Company A's computer system using the FileMaker Pro system and would and did send the invoices by U.S. Mail or by e-mail to Company A's customers. When ZIEGLER sent invoices to Company A's customers via email he would and did use his Company A email account.

15. It was further part of the scheme to defraud that when Company A received checks from its customers for services provided, ZIEGLER would and did take various checks and stamp the back of those checks with a stamp bearing the words "For Deposit Only [Company A's name] xxxxxx-0301."

16. It was further part of the scheme to defraud that ZIEGLER deposited the checks he had taken from Company A into his DBA Account that he controlled at Webster Bank ending in x-0301, and in so doing, falsely and fraudulently represented to Webster Bank and the banks on which the checks were drawn, that he had authority to deposit the checks, when in truth and in fact, he had taken and diverted the checks and the funds rightly belonged to Company A.

17. It was further part of the scheme to defraud that by falsely stamping the backs of the taken and diverted checks with the words: "For Deposit Only [Company A's name] xxxxxx-0301," ZIEGLER created the false impression with the banks and account holders that the customer checks had been properly negotiated and paid to Company A and deposited into a legitimate Company A bank account, when in truth and in fact, he had taken the funds for his own use.

18. It was further part of the scheme to defraud that ZIEGLER would and did create false and fraudulent entries in Company A's books and record keeping system to cover up the fact that he had taken and diverted the checks. The false entries included recording the date the respective invoices were purportedly paid, the corresponding check numbers, and the

corresponding amounts purportedly received by Company A, when in truth and in fact the funds had not been deposited into a Company A account, but were deposited into the DBA Account that ZIEGLER controlled.

19. It was further part of the scheme to defraud that ZIEGLER caused more than 400 checks payable to Company A to be deposited into his DBA Account that he controlled and took more than $1,000,000 , based on false and fraudulent pretenses representations and promises.

20. It was further part of the scheme to defraud that ZIEGLER took the fraudulently obtained funds that he deposited into the DBA Account he controlled and used the funds for his and his spouse's personal use and benefit, including for paying a monthly car payment, credit card payments, personal insurance payments, ATM withdrawals, and to fund transfers to other bank accounts held in his and his spouse's names, including at a financial institution in Maine.

21. It was further part of the scheme to defraud that ZIEGLER provided Company A's independent accounting firm false and fraudulent information when he provided them with the customer checks and deposit tickets for checks received in that he would and did intentionally fail to include the customer checks and deposit tickets for the checks that he had taken and diverted and which had been deposited into his DBA Account that he controlled.

22. It was further part of the scheme to defraud and in order to prevent and forestall the discovery of the fraud that when an inquiry was made by a fellow employee at Company A about a missing check and/or an invoice, ZIEGLER would and did take money from a personal account that he controlled and deposit funds back into the actual Company A account in an equivalent amount to the funds about which the question had been raised.

23. It was further part of the scheme to defraud that ZIEGLER moved the money he obtained from the taken and diverted checks between accounts and to cover various payments,

using ACH banking transfers and interstate wires.

24. It was further part of the scheme to defraud and to conceal the existence of the scheme and conceal the source of funds that ZIEGLER willfully failed to report the fraudulently obtained income from Company A on his federal income taxes and took affirmative acts of evasion to evade and defeat his federal tax obligation.

25. It was further part of the scheme to defraud and in order to prevent and forestall the discovery of the fraud that when asked about missing funds by a fellow employee, ZIEGLER would and did make false and fraudulent statements and stated that he did not know anything about the missing funds.

26. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the above described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, ZIEGLER did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, each wire as set forth below constituting a separate count of this Indictment:

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 1 | Nov. 10, 2017 | E-mail from ZIEGLER using his Company A email account to a customer at P&W sent by interstate wires attaching an invoice requesting payment of $8,184.75. |
| 2 | Jan. 23, 2018 | Wire transfer of $8,184.75 using interstate wires via the banking system to clear funds from the account of P&W at JP Morgan Chase Bank, N.A. to ZIEGLER's DBA Account at Webster Bank. |
| 3 | June 4, 2018 | E-mail from ZIEGLER using his Company A email account to a customer at LFC sent by interstate wires attaching an invoice requesting payment of $5,279.57. |

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 4 | June 22, 2018 | Wire transfer of $5,279.57 using interstate wires via the banking system to clear funds from the account of LFC at United Bank to ZIEGLER's DBA Account at Webster Bank. |
| 5 | June 29, 2018 | E-mail from ZIEGLER using his Company A email account to a customer at NPS sent by interstate wires attaching an invoice requesting payment of $7,576.60. |
| 6 | July 13, 2018 | Wire transfer of $7,576.60 using interstate wires via the banking system to clear funds from the account of TON at Bank of America to ZIEGLER's DBA Account at Webster Bank. |
| 7 | July 23, 2018 | E-mail from ZIEGLER using his Company A email account to a customer at TOG sent by interstate wires attaching an invoice requesting payment of $1,113.60. |
| 8 | Oct. 15, 2018 | Wire transfer of $1,113.60 using interstate wires via the banking system to clear funds from the account of TOG at People's United Bank to ZIEGLER's DBA Account at Webster Bank. |
| 9 | March 25, 2019 | E-mail from ZIEGLER using his Company A email account to a customer at SOC sent by interstate wires attaching an invoice requesting payment of $3,452.10. |
| 10 | April 10, 2019 | Wire transfer of $3,452.10 using interstate wires via the banking system to clear funds from the account of SOC at TD Bank to ZIEGLER's DBA Account at Webster Bank. |
| 11 | June 14, 2019 | E-mail from ZIEGLER using his Company A email account to a customer at LE sent by interstate wires attaching an invoice requesting payment of $9,258.91. |
| 12 | June 26, 2019 | Wire transfer of funds of $9,258.91 using interstate wires via the banking system to clear funds from the account of LE at Bank of America to ZIEGLER's DBA Account at Webster Bank. |
| 13 | July 1, 2019 | Wire transfer of funds in the amount of $9,000 using interstate wires via the banking system to transfer funds from an account at Webster Bank, account ending in x-1027 to Norway Savings Bank, account ending in x0046. |
| 14 | July 15, 2019 | Wire transfer of funds in the amount of $9,000 using interstate wires via an ACH transfer through the banking system, from the DBA account at Webster Bank, account ending in x-0301 to JP Morgan Chase credit card account ending in x-5724 in the name of Edward F. Ziegler II. |

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 15 | July 29, 2019 | E-mail from ZIEGLER using his Company A email account to a customer at SPAC sent by interstate wires attaching an invoice requesting payment of $6,080. |
| 16 | Aug. 20, 2019 | Wire transfer of funds of $6,080 using interstate wires via the banking system to clear funds from the account of SPAC at Simsbury Bank & Trust to ZIEGLER's DBA Account at Webster Bank. |
| 17 | Oct. 18, 2019 | E-mail from ZIEGLER using his Company A email account to a customer at HWG sent by interstate wires attaching an invoice requesting payment of $9,119.67. |
| 18 | Nov. 4, 2019 | Wire transfer of funds of $9,119.67 using interstate wires via the banking system to clear funds from the account of HWG at People's United Bank to ZIEGLER's DBA Account at Webster Bank. |
| 19 | Nov. 14, 2019 | E-mail from ZIEGLER using his Company A email account to a customer at KK sent by interstate wires attaching an invoice requesting payment of $2,223.80. |
| 20 | Nov. 20, 2019 | Wire transfer of funds of $2,223.80 using interstate wires via the banking system to clear funds from the account of KK at Liberty Bank to ZIEGLER's DBA Account at Webster Bank. |
| 21 | Feb. 19, 2020 | E-mail from ZIEGLER using his Company A email account to a customer at GSA sent by interstate wires attaching an invoice requesting payment of $3,107.12. |
| 22 | March 11, 2020 | Wire transfer of funds of 3,107.12 using interstate wires via the banking system to clear funds from the account of GSA at Rockville Bank to ZIEGLER's DBA Account at Webster Bank. |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS TWENTY-THREE TO TWENTY-SEVEN
(Tax Evasion)

27. Paragraphs 1 through 9, and 11 through 25 are incorporated by reference.

28. From in or about the dates indicated in the chart below, in the District of Connecticut and elsewhere, the defendant EDWARD F. ZIEGLER II, a resident of New Britain, Connecticut, willfully attempted to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America, for calendar years 2015 to 2019 indicated in the chart below, by committing the following affirmative acts, among others: (1) using his position as Office Manager to take and divert customer checks payable to Company A as payment for services due to Company A; (2) maintaining a personal bank account at Webster Bank in the name of Edward Ziegler II, DBA [Company A's name], account number ending in x-0301; (3) stamping the taken and diverted checks with the words "For Deposit Only [Company A's name] xxxxxx-0301;" (4) depositing the taken and diverted checks into his account at Webster Bank in the name of Edward Ziegler II, DBA [Company A's name], account number ending in x-0301; (5) using the taken and diverted funds for his and his spouse's personal use and benefit, including paying personal credit card bills and other personal expenses, such as clothing stores, restaurants, and insurance premiums; (6) submitting a mortgage application to Ameri Home Mortgage Company and omitting from the application his DBA Account at Webster Bank, into which he had deposited and continued to deposit significant funds via the diverted checks; (7) withdrawing large amounts of cash from his DBA Account at Webster Bank into which he had deposited the taken and diverted checks payable to Company A; and (8) preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service, for each calendar year 2015, 2016, 2017, 2018, and 2019. In fact, as the defendant knew, he failed to report a total of at least

9

approximately $802,864.77 in taxable income and owes the United States an additional $173,643 in federal income tax for those years as identified below.

| Count | Dates (In or About) | Tax Year | Unreported Income | Additional Tax Due and Owing |
|---|---|---|---|---|
| 23 | January 2015 to April 2016 | 2015 | $215,685.79 | $50,593.00 |
| 24 | January 2016 to April 2017 | 2016 | $173,171.98 | $39,669.00 |
| 25 | January 2017 to April 2018 | 2017 | $146,999.33 | $34,784.00 |
| 26 | January 2018 to April 2019 | 2018 | $136,097.07 | $25,006.00 |
| 27 | January 2019 to April 2020 | 2019 | $130,910.60 | $23,591.00 |

Each in violation of Title 26, United States Code, Section 7201.

## NOTICE OF FORFEITURE ALLEGATIONS
(Forfeiture Relating to Wire Fraud Offenses)

29. Upon conviction of any of the wire fraud offenses alleged in Counts One through Twenty-Two, any of the wire fraud offenses, the defendant EDWARD F. ZIEGLER II shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 (wire fraud) but not limited to, the following:

Money Judgment:

A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343.

30. If any of the above-described forfeitable property, as a result of any act or omission of ZIEGLER, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON    3-15-22

_____
LEONARD C BOYLE
UNITED STATES ATTORNEY

_____
MICHAEL S McGARRY
ASSISTANT UNITED STATES ATTORNEY